Good morning, Your Honors Counsel. May it please the Court. I am Dree Colopy, an attorney of record for the petitioner and a supervising attorney in the American University Washington College of Law Immigrant Justice Clinic. I am honored to introduce Andrew Porter and Mackenzie Stoker, students in the clinic who are appearing today under Local Rule 46A. With the Court's permission, they will now present the petitioner's argument. Permission granted. Thank you. Good morning, and may it please the Court. My name is Andrew Porter, representing petitioner Jaime Daniel Navarro Cerritos. I will be discussing the jurisdictional and timeliness issues while my colleague, Ms. Stoker, will handle the merits of Mr. Navarro's claims. This case is about a petitioner who diligently exercised his procedural rights as they existed at the time. Despite this, the government is seeking to deny him his day in court, imposing jurisdictional requirements where there are none to chip away at judicial review for non-citizens who cannot challenge their removability, but who wish to seek review of their CAT and withholding only claims. Neither the statutory text, congressional intent, nor the Supreme Court jurisprudence limit review in the way the government would have you do so today. First, this Court has jurisdiction over Navarro's petition. There is no jurisdictional requirement to challenge removability. Second, although Navarro's petition is untimely post-Riley, 1252B1's 30-day deadline can and should be equitably told. There is no jurisdictional requirement to challenge. Even if we possess jurisdiction, that doesn't relieve you from the burden of indicating that the relevant statute and rule permit equitable tolling. That's correct, Your Honor, and I can jump to that. So you've got the jurisdictional argument is one thing, but you still got the statute and the rule to contend with. Yes. Yes, Your Honor. There are two layers to get through today. And if you please, I can jump straight to the equitable tolling. The statute itself, 1252B1, is subject to equitable tolling. Post-Riley, the Court held open the opportunity to apply the presumption for equitable tolling that the Supreme Court established in Irwin. That is a rebuttable presumption that can only be rebutted by the statutory text and the statutory scheme themselves. Here, the statutory text is no more mandatory than a series of statutes that this Court has applied equitable tolling to. I think that the difficulty that you have here is that you have to contend with the combination of the statutory text and Federal Rule 26. I think it's the combination that makes things particularly tough, because you could say, well, there's a rebuttable presumption in favor of equitable tolling under the Irwin case, but when you combine the very clear, direct language of the statute with the wording of Federal Rule 26, it's that combination of things that expresses a congressional intent that's hard to overcome. Well, we respectfully disagree that Rule 26 really plays into this at all. The nutraceutical case that the government cites has never been extended to the statutory context. In Nutraceutical 26B1, a separate Federal Rule of Appellate Procedure singled out Federal Rule of Civil B1's 30-day deadline. How do you deal with, because we've had a number of these cases, and we have innumerable cases. I mean, I agree they were unpublished decisions, but in case after case after case, we've declined to extend the period because of just the textual wording of Rule 26 and the statute. And the particular thing that's hard, I think, for you to overcome is the language that the court may not extend the time to file unless specifically authorized by law, unless specifically authorized by law. And then when you look at the wording of the statute, which says that it must be filed no later than 30 days after the final date of order of removal, that is the exact opposite of specifically allowing and authorizing something by law. In fact, it doesn't. It's the exact opposite. It says no. It's far from authorizing something by law. It says it must be filed within 30 days. And so I don't know how you get around the fact that this rule says specifically authorized by law. And not only is there no specific authorization, but there's a clear requirement using the word must. Yes, Your Honor. That's just tough. Yes, Your Honor. So two points to address that. First, the specifically authorized by law exception includes the application of equitable tolling. Equitable tolling, that presumption is read into the statutes as though it were the text of the statute. Where is the specific authorization by law? Where is the authorization by law? We just can't blow by the statutory language that's as clear as this. Well, the language of 1252... Could you just tell me where the authorization is? The authorization is the equitable tolling principle that is read into the statute. The text itself that says... No, tell me from the statute. Where is the authorization in the statute? It says it must be filed no later than 30 days. And they can, you know, they can extend that. But as I say, we've had, I think, three or four decisions that have raised this very question. And in each case, we've declined to extend the time because of this language. Yes, Your Honor. The language in 1252B appears pretty, you know, stringent in terms of must. But this court in Williams and in Cusk applied equitable tolling principles to statutes that said motions to reconsider must be filed within 30 days. No exception written to the statute. And in Cusk, they said motions to reopen shall be fired no later than the amount of days required there. So those statutes did not require exceptions. The equitable tolling principles were read into the statute as though they were the text of the statute themselves. Unless that fits into the... But that reply that you've given me, you're asking us to read into the statute things that aren't there. Yes, Your Honor. That's the kind of how the application of equitable tolling to statutory requirements works. That's how it's applied. But you add... No, you say you keep using... You just use the word implied. But that's not what... They're not... The language of that rule is specifically authorized. It's the exact opposite of implying provisions in statutes. And then you have the Supreme Court's decision in this... I guess I have a hard time pronouncing it. I say it's neutroceutical or whatever it is. And it says whether a rule precludes equitable tolling terms on whether the text of the rule leaves room for flexibility. And so whether pertinent rule or rules invokes, show a clear intent to preclude tolling. Courts are without authority to make exceptions merely because a litigant appears to have been diligent. I may not agree with that, but it seems to say stop implying things in the face of the specific authorization language. That's just basic 1A maximum of law. Well, respectfully, Your Honor, neutroceutical is talking explicitly about rules. Rules of civil procedure, rules of federal appellate procedure. The principles of neutroceutical have never been extended to the statutory context where there is this equitable presumption for tolling. As the D.C. Circuit and Nelson v. SEC noted, neutroceutical has never been extended past the limited application to 23F, which was singularly pointed out for inflexible treatment. So here we have this equitable tolling principle that's read in because that's what we have to look at. We have to look at whether Congress... And Your Honor, I see my time's expired. May I ask a question? I certainly got some rebuttal here, but why don't you make these points in rebuttal? And in the meantime, my co-panelists have questions. Stay up there until we know. We also want to hear from Ms. Stoker. Do you have any further questions of this gentleman? Have you made your best argument that equitable tolling applies? Well, I think one thing that has not come up is that the scheme, which is the decisive factor in whether equitable tolling applies, the scheme of the statute, the Supreme Court in Enbridge just identified that as the most important part. Here we have a very simple scheme with not very many exceptions at all held throughout 1252b1 and 1252 more broadly. It's very dissimilar to Ariana, which had 16 exceptions, and Enbridge, which had six. This is not a highly detailed statute. It's aimed towards litigants and noncitizens who lack legal knowledge, which furthers the presumption that these unsophisticated claimants are subject to the equitable tolling, as the Supreme Court stated in Auburn Regional Medical Center, and thus our petitioner filed his petition under the law as it existed at the time, pre-Martinez and pre-Riley, and these changes in law he could not have foreseen. The government makes much of his ongoing awareness of the oral arguments in Martinez, but the government itself didn't know what constituted a final order and the timeline started at that time. He exercised his rights as they existed at the time and complied with this court's requirements to seek review. If there are no further questions. You okay?  Well, doesn't Riley help you in a sense what the court did? It sent it back to us, didn't it? Mm-hmm. Yes, Your Honor. So there was nothing else to do. The Supreme Court said it was something else to do. Yes. Not jurisdictional. Yeah. And then follow up to Judge King's question. There's some more arrows in your quiver, aren't there? Yes, Your Honor. Absolutely. Yeah. So in Riley, I mean, Justice Sotomayor in her descent explicitly said that this statute will now have to be analyzed by courts of appeal to determine whether equitable tolling applies. It's no longer jurisdictional and courts have never analyzed whether it was mandatory because courts typically took the jurisdictional and mandatory language to mean the kind of the same thing in the past. So now we have this new world where we get a chance to read in these equitable principles as Congress intended to protect the rights of non-sophisticated claimants who could not have foreseen these drastic changes in the law. Okay. Thank you, Your Honors. Ms. Stoker, let us hear from you. May it please the Court, my name is Mackenzie Stoker and I'll be covering Mr. Navarro's merits claims. This is a case about a man who has been continuously assaulted, threatened, and harassed by MS-13 since he was approximately eight years old. Mr. Navarro respectfully requests that this Court reverse the agency's decisions and remand with instructions to fully consider the evidence in the record for the following three reasons. First, the agency erred in determining that Mr. Navarro had neither an actual or imputed political opinion. Second, the agency erred in determining that Mr. Navarro's PSG wasn't cognizable. And third, the agency erred by failing to provide reasoned explanation and properly weighing both the country condition and the expert evidence in the record in determining that Mr. Navarro is not at risk of future torture if returned to El Salvador. Moving first to Mr. Navarro's political opinion claim. The agency erred in determining that he had neither an actual or imputed political opinion because it reduced his anti-gang activism to a single refusal to join MS-13 when he was approximately eight years old and ignored the replete evidence in the record that Mr. Navarro worked with youth to help them avoid gang recruitment by MS-13 when he returned to El Salvador in 2016. It also ignored the evidence in the record regarding Mr. Navarro's actions with the youth committee in El Salvador to help the youth get away from potential gang life and avoid gang recruitment. The agency also erred on Mr. Navarro's political opinion claim by characterizing MS-13's persecution of Mr. Navarro simply as a personal dispute between Mr. Navarro and Vallecios, the landowner that donated the land that was used for the soccer field for the youth committee. Both the IJ and the BIA ignored the important timing of the persecution that happened with Mr. Navarro and MS-13 upon his return to El Salvador in 2016. The MS-13 already started persecuting him again and assaulting him again, calling him things like the New Shepard, referencing his work. The question here is the nexus? Yes, your honor. So isn't that a factual question? No. Isn't that subject to a substantial evidence review? No. So the issue with the nexus here was that the IJ and the BIA applied the wrong legal standard when determining nexus. Well, I don't understand that because the wording in the statute is because of or on account of, those are the words that suggest a nexus? Correct, your honor. And the agency in this case made a decision regarding the nexus and it was factually based. For example, the agency noted that the individual here had not participated in any anti-gang demonstrations and given no speeches. There was no advocacy and everything. And so that was a very fact-specific decision with respect to the nexus question that the agency reached. And I would think that I don't see how we get around the nexus question around the substantial evidence standard of review. And then there's the additional question of the particular social group. That has two problems. One is it's an exceptionally broad definition that could conceivably cover anything from jaywalking to murder. And the other problem is that there's no evidence put on, or certainly not persuasive evidence, that Salvadoran society regards this as a particular social group. And we've said time and again that in order for something to qualify as a particular social group, there has to be evidence that the society regards it as such. And you don't, that evidence is simply not present here and I don't think it was presented. We disagree, Your Honor. So part of Mr. Navarro's argument with the errors that both the immigration judge and the BIA made regarding... What I'm suggesting is that I think you have multiple hurdles dealing with the question of whether this is a particular social group, number one, and number two, you've got a problem with nexus. And so there's just one hurdle after another sequentially to overcome. Correct, Your Honor. The evidence on the record regarding the PSG's social distinction shows that Salvadoran society had laws in place to protect people who had crimes as well as the gang code. But report could cover anything and the connection with respect to MS-13, that could cover anything. I mean, is the connection that somebody's supposed to be a gang member or is the connection that simply they knew somebody or I don't know and what qualifies as a report but mainly with respect to the particular social group, is this recognized as such in the itself? And there's no evidence that Salvadorans regard this as a particular social group. But at any rate, maybe my co-panelists have a question. Bob, do you have any questions? Roger. Counselor, you have a cat claim, correct? Correct, Your Honor. You don't have to show a social group for that, do you? No, you don't, Your Honor. Exactly. You don't have to have a, right. And in this case here in terms of nexus, the question is about in terms of you can't generally say, well, the gangs are there and I'm fearful I had some encounter because then you would need some evidence as to what connects you the nexus to that fear to them. This case is on steroids in the sense of that. Correct, Your Honor. The man was raped. Yes, Your Honor. He was raped and accused of killing one of the leaders of the gang. Correct, Your Honor. What nexus could there be more than that? This is not one where I say, I read the newspaper, these people are dangerous, nobody's come to me yet but I want to leave the country. That's where you need some nexus. But here, my goodness, it is atrocious. Absolutely. And the record is replete of that in this case. Correct, Your Honor. Is any credibility finding against that that said that that didn't happen? I mean for the government? He was found credible, wasn't he? He was found credible. Correct, he was, Your Honor. That's that question. Yes. Okay, okay, that's all I have. Thank you. Great, thank you. Awesome, thank you, Your Honors. Mr. Pravi. May it please the court. Christopher Pravi for the Attorney General. This court lacks jurisdiction because the petitioner did not challenge a final order of removal in his petition for Rubio. The petitioner agreed, in fact, in his 28-J letter responding to the government's 28-J letter on Navarrete in the Ninth Circuit that a final order of removal must be challenged in order to have jurisdiction in this court. And as Riley has said, a decision out of withholding only proceedings is not a final order of removal. That's the only thing he's challenged in his petition for Rubio. That's the only thing this court needs to find, is that he has not challenged a final order of removal and therefore this court has no jurisdiction. Isn't that really a challenge to the removal? I'm sorry? Isn't that a challenge to the removal in a sense? Because the removal would be to El Salvador, right? Correct? He does not challenge the fact of removability. No, I'm saying, it's not a trick question, I'm just saying the removal as it stands would be to El Salvador, correct? He challenges the country to which he would be removed. Yes, but if he didn't challenge it he would have to go to El Salvador. If that's where the government chose to remove him, yes. Right, so withholding allows him to have an option to go someplace else, doesn't it? If he, yes. So that is a sense, it is a somewhat, it's a challenge to his removal. No, your honor. Aspects of his removal, the order, because the order says you go to El Salvador. No, your honor. Riley says that the final order of removal does not include determination of where you are going to be removed. Where are you going to send him? What would you say? I don't have the answer to that. Well, you're telling us that it had nothing to do with removal. I can't, you can't answer that question, so you don't know, you can't assert. You say you don't, didn't have an answer to that? I don't, I don't understand. I assume you're asking me where he would be sent if not to El Salvador. That's a direct question. You don't have to assume it. Yeah, that's what I asked you. I don't know the answer to that question, your honor. Well, El Salvador is where the MS-13 is, right? That's where he's asserting a claim. Yeah, and that's where he was raped. Yes, your honor. He was found credible. Uh, yes, your honor. So we have, we accept what he said, he found credible. Uh, no, your honor. Under Ming Dai v. Garland. We don't find him credible. I'm sorry? He's not credible. Are you saying that? No, your honor. We don't accept that. Your honor, what I'm saying, your question was what to do with the credibility finding. I'm merely... There's a credibility finding in his favor. Yes, your honor. And we're not disputing that here. Okay. I'm wondering, um, here about the jurisdictional question. To one side, if you accept the petitioner's view of the matter, it would require Congress to actually state in the statute that equitable tolling is not allowed. And there's no statute that I know of, um, in the entire code that, that says that. And so you would, you would have to force Congress to rewrite a large body of law, because that's not the way the law is, is, is written here. The law is written that you have a rebuttable presumption that there may be a presumption in favor of equitable tolling, but it's also rebuttable. And the rebuttal is simply the language of Rule 26, which requires a specific authorization in law that isn't present in this statute. And if you say, well, that's not, um, that's not enough to rebut the presumption that that clear language and that clear rule is not enough to rebut the presumption, you're pushing Congress in the direction of saying, you have to use the words no equitable tolling is allowed in the statute, and there's no statute written that way. Your Honor, I am not aware of any such statute either. And in fact, Congress would have enacted all these statutes. Isn't that where the, isn't that where all this is leading, if this is insufficient? Uh, that if, if Rule 26, uh, B2 is not sufficiently clear that equitable tolling does not apply here, then, uh, then I suppose it could be the case that Congress would have to do a lot of redrafting. But then Congress would have to rewrite a vast body of federal law. That may well be the case, Your Honor. If this is, if this is insufficient, this language that says it must be filed within 30 days, plus a rule that says equitable tolling is not permitted unless you have a specific authorization in law. That's about as strong as a case can get. And if that's not insufficient, then the only thing left, the only option left to Congress is to rewrite a vast body of federal statutes. And, and, and none of them are written that way. And it kind of, because Congress entrusted the courts to, to take the specific directive in the statute and the specific directive in the rule to clearly convey its intent. Yes, Your Honor. And in fact, uh, uh, something else that, uh, the petitioner is asking this court to read into the rule itself, the equitable tolling presumption. That's, he's not asking the court what? He's asking this court to read into the rule, not into the statute, but into the rule itself, an equitable tolling presumption. But rule 26 is the cases that he cited for this proposition that, for example, a motion to reconsider, a motion to reopen, those are purely creatures of statute. They have no, they do not deal with proceedings governed by the federal's appellate procedure, which governed this court. The, the, this court is governed by 26B2. There has to be a specific authorization in law. That's, you know, the word specific authorization in law in order to extend these, these time deadlines that are expressed as must, et cetera. Um, we know what the time deadline is. We know there's not a specific authorization in to extend it. And as much as we might wish it were otherwise, at some point, we just have to follow what the rule and the statute, what, what they said. We just can't, we just can't blow past it. It, it, it just is not open to us as judges to take the word specifically authorized by law, note that they are absent, and then say, well, none of it matters. Yes, Your Honor. That is correct. Well, what did this, what did the Supreme Court do? That's what we take our orders from, from the Supreme Court. When they had rallied, did they say that, that there was nothing, there was no equitable toll? I mean, there wasn't, wasn't available? They left the question open, Your Honor. They left it open. Well, I mean, they, they, they're better than us. And they moved 26 and all of that was carte blanche, period. In the story, they could have said that. It was also not raised, it was not an issue, I think, the, um, um. It's not an issue. The, uh, that wasn't an issue as to whether or not, in fact, he had challenged timely. Trying to remember. The removal order. Okay, no, that's right. Uh, if it were not jurisdictional, if it were not jurisdictional, it was, I believe, was it that, I think it was that case, and also Martinez, uh, where the, um, uh, the government waived the timeliness issue. If, if it were not jurisdictional, I believe that's the case. So that, that, that the court did not actually need to reach whether equitable tolling applied in this particular context. I'm not arguing, and I'm not talking about jurisdiction. Yes, I want to make clear, I am talking about the plain language of the federal rules and the plain language of the statute. And the, and the fact that, that is, you know, they're just time after time after time. I don't agree with something. But as a judge, I've got to follow the text and I've got to follow the rule. And that's just basic. It's a primer. And you know, here, and again, with this neutral cow or whatever decision, um, as bad as it might seem, Congress is tightening up on delays. And the statutes are becoming, and the statutory limitations period are, are narrowing. And that, we may not like that development. And we may not like that trend. But the Supreme Court has said, do not just allow these delays to go on and on in hopes, hopes that sometime in the future, there will be a favorable decision comes up and we can latch on to it. That is just not the way the Supreme Court is ruling. And it isn't the way that Congress is ruling. And it may be personally distasteful to me, but the law is the law. Yes, Your Honor. The, the, um, the, the federal rule is what applies here. There's no exception built into the rule. There's no exception, specific exception built into the statute. And that ends the inquiry. The proposition is never any equitable total. For a petition for review of an agency order in this court, correct. So you say, but you're saying there's no jurisdiction. You've got a motion to dismiss here. The, so the motion to dismiss was before Riley said it was not jurisdiction, the timeline, the time. You say no jurisdiction. You say there's no equitable tolling. There is no equitable tolling. We do have a jurisdictional argument, which is. But you say there's no jurisdiction. That's your first point. Yes, Your Honor. No jurisdiction. Are you giving that up? No, Your Honor. Now what did, what did the Sixth Circuit do to you? Uh, the Sixth Circuit, uh, they held there was equitable tolling and they got the, uh, the question wrong. What, what, that was just what, a couple weeks ago? Uh, very shortly. Uh, I don't remember. I mean, you wrote us a 28-J letter. You know what that is? Yes, sir. Or somebody did. Yes, I did, Your Honor. The Justice Department wrote 28-J letters about the Sixth Circuit case. Yes, Your Honor. And they held there was equitable tolling. They did, Your Honor. You got a part of the circuits. How many circuits have said there are equitable tolling? There is equitable tolling. I believe the Sixth is the first to weigh in on this specific question. The Sixth. Yes. So they, and there was a motion dismissed there, just like this. And they denied it and said there was equitable tolling. I believe that's correct. A motion to dismiss or for summary disposition. You believe that's correct. You don't know, then, if you, or do you? I don't recall on, uh, immediately whether it was a motion to dismiss or a motion for summary disposition. So you want us to have a circuit split, then? You urge us to have a split on it. Yes, Your Honor. Because we go, you're arguing, then, for a circuit split. Yes, Your Honor. That you're saying we should go against the Sixth Circuit. Yes, Your Honor. Okay. You're not arguing for a circuit split, really. What you're arguing for is an application of clear statutory language and clear textual guidance from the rule. That is correct, Your Honor. You have to be arguing for a circuit split because you just stood there and told me, told us, that the Sixth Circuit ruled against you and in favor of equitable tolling. I apologize, Your Honor. I meant to say I agree with the, that we are arguing for a clear application. I know that's what you're arguing for, but the Sixth Circuit ruled against you. Yes, Your Honor. So if we rule against the Sixth Circuit, we're creating a circuit split. And I agree with that, Your Honor. And you agree with, that we are. Okay. Yes, that's what we're arguing for. We are arguing for a circuit split. Yes, Your Honor. Are there any other circuits that weighed in directly? The First Circuit has held that it, it, not in the equi-, well, the First Circuit has specifically said that this rule prevents the petition for reviews timeline from being extended. That was in Gonsalves v. Bondi. So the Sixth Circuit agrees with you? No, the First Circuit agrees with us. Who? The First Circuit. The First Circuit agrees with you? Yes. That's what I'm, that's what I intended to ask. I didn't, it wasn't very clear. Would you say why you think the First Circuit agrees with us? The First Circuit. So there's already a circuit split? I guess the Sixth Circuit created the circuit split in that sense, yes. So the circuit, so the Sixth Circuit's going one way against you, and the First Circuit's going your way? Yes, Your Honor. So we're in a position to take one side or the other? Yes, Your Honor. And I would like to clarify that the First Circuit looked only at the rule, not at the statute, at the 1252, whether there was equitable tolling, whether the statute affected anything. They looked only at the rule and said the rule did not allow for extensions. They were positioned, not positioned, but some of the queries that Judge Wilkinson was saying about the rule. Right. That's what they looked at. They only looked at the rule because that was, the equitable tolling question was not before them in that case. That wasn't before them. I'm sorry? It wasn't before them, right. But the circuit that was before them, the Sixth Circuit ruled against you. That is correct, Your Honor. So on that point, we would be a circuit split? Yes, Your Honor. Okay, fine. And the reason this court should disagree with the Sixth Circuit is that they disregarded the express instruction of the Rule 26b-2. They looked at it instead of as the rule that governs how you interpret statutes, they interpreted it the same as a statute. They imported the same presumption from Irwin that you give to statutes to the rule. Did you argue the case in the Sixth Circuit? No, Your Honor. Did you argue the one in the First Circuit? Yes, Your Honor. So you're the winner. One of your people in the Justice Department went out there to Cincinnati and lost. It was not argued. It was decided on the other branch. Well, it wasn't argued. It went to Cincinnati and lost. Yes, Your Honor. I did, to me, and you know, you must forgive me, but I am, I see this in rather simple terms. And I see the language that, and I apologize for hammering the point, but I hammer it only because it seems to me so clear, that it says that you should not extend the statutory deadlines unless specifically authorized by law. And the word specific authorized by law means that Congress would have to take some sort of positive step under law to allow the extension to take place. And not only is there no positive step of any sort, but there is a, to the contrary, the statute that we're dealing with and the statutory limited, statutory limitations period that we're dealing with says the petition must be filed within 30 days. That's not only an absence, that's not only an absence of any specific authorization by law, it's the exact opposite. It's that, to the extent you look at that language, it disallows. It uses, it must be filed. It disallows a specific authorization in the context of where the federal rules say there has to be a specific authorization and it's absent. There's no specific authorization here. And even beyond that, it's the statutory directive is expressed in clear, emphatic, directive language. Yes, Your Honor. That is, in fact. That's where it's, that's where it bottoms out and it's not that complicated. And we've been told here we can imply this and we can imply that. But when I use the word, when I hear the word specific authorization by law, that seems to me to cut off implying things. It's a direction to the court, don't go around implying this and that. Read the statute. See if there's some specific authorization under law. What's the word equity mean to you? Equity means, I guess, fairness. Fairness, yeah. Isn't equity the whole, without getting into the deep thing about legal theory, but isn't in fact equity was created because it fills the gap where law is not adequate. That misses us the whole idea of where law is not adequate. It's an equitable type thing. Historically, that is how it was created in our current jurisprudence where our law is speaking clearly. Equity does not intercede. Equity doesn't, there's no view of equity that I've heard of that allows you to disregard a plain statutory text. If that view of equity is undertaken, we might as well be law bankers from the bench. Why rely on Congress? We have our own. We have our own view of what the law should be. Congress says it must be filed within 30 days. Well, we have a different view, so we'll amend the statute. The point is, with all respect to opposing counsel, equity does not allow a court to disregard plain statutory directives and plain statutory text. If it did, we're off into, I think, some wide open field. The implications of it are multiple and unsettling. Your Honor, the government agrees with your position. Unless this court has any further questions, the attorney general requests you deny or dismiss the petition for review. Thank you. All right. Mr. Porter, please. Thank you, Your Honors. Just a few points that I'd like to clear up. I'll start with equitable tolling. The government argues that we are asking you to read the equitable tolling into the rule of civil or the rule of appellate procedure. That is not what we are asking you to do today. The equitable tolling principle goes directly into the statute. Congress knows, when passing laws, that equitable principles will be infused into them to account for extraordinary circumstances where petitioners exercise reasonable diligence. Congress did not intend, by approving the appellate rules of procedure, which are not a statute and not drafted by Congress, to foreclose the application. The federal rules bear the imprimatur of Congress as well. They do, Your Honor, yes. I mean, you say Congress. It's not Congress's view is expressed in statutes, to be sure. But Congress's view is also reflected in the federal rules. That has to go through a process. I think the final step of which is that Congress must sign off on it. Congress has to sign off on it. And it's not something where they're just invariably rubber stamping things in Congress. There are a lot of these rules. There are a number of these rule changes that generate quite a bit of controversy. And so I don't think that we are permitted to assign to the federal rules some sort of lesser status. If we are, then all bets are off. If that's the case, then it would be . . . Wouldn't it be superfluous to even talk about whether the rule is jurisdictional or not when it's at the Supreme Court? Wouldn't it be . . . Why would you talk about jurisdiction if Rule 26 said you can't change it, whether it's jurisdictional or not? I'm sorry, Your Honor. My point is, why do you have to even . . . Why would you have to even talk about jurisdiction if position . . . You could be taking that, but you can't change it anyway, because there's nothing that allows equitable tolling. Right. Yes, Your Honor. And the government concedes that Congress would have to rewrite every single statute to expressly account for equitable tolling, if so, which would create a whole host of problems. I'd also like to talk about the fact that we are challenging the removal order by challenging a term of it, namely where Mr. Navarro will be removed to. I suppose the hard line view on this case would be that there's no jurisdiction and then cuts off everything, but I'm not going that far. I'm not willing to take the step that says there's no jurisdiction. Congress controls the jurisdiction of the federal courts, and if Congress wants to make its position clearer than it presently is, Congress can do that because Congress controls federal court jurisdiction. But what . . . I'm not going that far. I'm not arguing for an absence of jurisdiction. Understood, Your Honor. And by not going that far, it leaves it up to Congress to change it at any time simply by changing the language of the rule or the language of the statute. Either one would suffice, but what doesn't suffice is the combination That's where I stumble. Although if either prong, if the statute were changed or the rule was changed, we got another . . . we got a whole new ballgame. And I'm not going from . . . you know, I'm not saying that this is jurisdictionally prohibited from us to asking the question of equitable tolling. I think we get . . . but I think the answer presently is clear from the rule, the combination of the rule and the statute. But that doesn't mean that that's frozen. Any one of those could change. And by saying that I think there's jurisdiction, it leaves it open. It leaves it open to change on either prong. Yes, Your Honor, and I see my time has expired. Do you agree with the status of the circuit split that counsel for the government explained? Mostly, Your Honor. I mean, the Sixth Circuit has gone against the government's interpretation of whether equitable tolling should apply and if nutraceutical factors in at all. The First Circuit case that they mentioned was only about the federal rule of appellate procedure and whether it cuts off review, not at all examining whether equitable tolling was present. So there's not an existing circuit split. The government is asking you to . . . So there's no circuit split on equitable tolling? Correct. There you go. Well, you know, I'm not in favor of circuit splits, but if there were never such a thing as a circuit split, then the first court out of the gate would decide the issue for the entire country. And the rest of us might as well just hang up our cleats, take them to the locker room, because we're in a position, we're taking the position that once one circuit comments on something, it's all but foreclosed from another circuit, even expressing a different view. And I don't think the judicial system was set up in such a way that one circuit determines for all. Yes, Your Honor, and I would certainly not encourage you to hang up your cleats. It certainly doesn't, but I guess Supreme Court will have to eventually do this. So the question is, where does the Fourth Circuit want to hang his hat? On the rail that talks about equity in terms of cases like this, just brutal type facts, and then it doesn't apply on another side of it. So you're right. If first come first rules is not the rule, but at least we get a chance to look at it, which side do we want to hang our hat on when the Supreme Court decides this case? Yes, Your Honor. But your point is there's not a circuit split yet.  Correct. We got that straightened out. Yes. Yeah. Not a circuit split yet. Correct. And yes, we think the... Equitable tolling hasn't been dealt with. Yes. We think the reasoning in Oxlash-Perez in the Sixth Circuit is very persuasive. And again, we respectfully request Mr. Navarro would have had to foresee the future in terms of the law changing drastically in his case in order to secure review over the BIA and the IJ's numerous errors, legal errors. And that is not simply what equity in the law demands. So we respectfully request that you remand with instructions to consider all the evidence fully. Thank you. We thank you. We'll come down and greet counsel. Bob, do you want to go into the next case or would you like to take a break? I need a break. All right. We'll take a brief recess and then come back and hear our final case. I couldn't say I desperately need a break. Well.
judges: J. Harvie Wilkinson III, Robert B. King, Roger L. Gregory